UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEI MEI HU, | § | |
| *Plaintiff,* | § § § | |
| v. | § § | |
| ASK AMERICA, LLC, | § § | |
| *Defendant/Counter-Plaintiff,* | § § § § | Civil Action No. 3:22-CV-2432-X |
| v. | § § | |
| VAXXINITY, INC., MEI MEI HU, and LOUIS GARFIELD REESE, IV, | § § § § | |
| *Counter-Defendant and Third-Party Defendants.* | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Mei Mei Hu and Louis Garfield Reese, IV and Vaxxinity, Inc.'s (collectively, "the Vaxxinity Parties") motion for summary judgment (Doc. 111) and Ask America, LLC's (Ask America) motion for partial summary judgment (Doc. 117). After reviewing the briefing and relevant caselaw, the Court **GRANTS IN PART AND DENIES IN PART** Ask America's motion for partial summary judgment and **GRANTS IN PART AND DENIES IN PART** the Vaxxinity Parties' motion for summary judgment.

In summary, Ask America's common law fraud and breach of contract claims remain for trial. In reaching that result, the Court **FINDS AS MOOT IN PART**

1

**AND DENIES IN PART** the motion to strike at Doc. 133, **DENIES WITHOUT PREJUDICE** the motions to strike expert designations at Doc. 120 and Doc. 114, and **FINDS AS MOOT** all other pending motions.

## I. Factual Background

This is a multimillion-dollar case about a three-page contract relating to an initial public offering gone sideways. Vaxxinity, Inc. (Vaxxinity) is a biotechnology company that was formed in 2021 when United Neuroscience, Inc. and Covaxx, Inc. (Covaxx) merged. The Executive Chairman of the Board of Vaxxinity is Louis Garfield Reese and the Chief Executive Officer is Mei Mei Hu.

Vaxxinity was set to have an initial public offering. James Chui, a Vaxxinity board member, mentioned to Hu and Reese that he was interested in purchasing $20,000,000 in Vaxxinity stock through the initial public offering. As it happens, Ask America was also interested in investing in Vaxxinity at $50,000,000, but later reduced its commitment to $20,000,000.

Before the initial public offering closed, Hu, Reese, and people from Ask America discussed the possibility of Ask America facilitating Chui's purchase of $20,000,000 in stock. Eventually, Hu, Reese, and Ask America came to an agreement memorialized in a document entitled "Guaranty." This document, to which Ask America, Reese, and Hu agreed, provides that Ask America would purchase and hold $20,000,000 in Vaxxinity stock until an individual, James Chui, would purchase the stock from Ask America on or before the "Liquidation Date." Reese and Hu then personally guaranteed to cover certain losses Ask America might incur plus

2

$3,600,000. But if Chui did not purchase the stock, then Ask America could either sell all the stock, hold the stock, or sell less than the total amount of stock. However, there was no underlying agreement that Chui would, in fact, purchase the stock in question—only that whether he purchased it or not, Ask America would be covered.

So, what happened? Well, as the contract calls for, Ask America dutifully purchased the nearly $20,000,000 in stock. After the initial public offering, the stock price tumbled. Ask America asked when it should be expecting Chui to purchase the stock and Hu informed Ask America it would be in February. February came and went without purchase or payment from Reese and Hu. Then the litigation began.

## II. Legal Standard

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[2] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[3]

---

[1] Fed. R. Civ. P. 56(a).

[2] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[3] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (cleaned up).

## III. Analysis

Because the Court is considering cross motions for summary judgment, the Court will first look to whether Ask America's claims survive (Vaxxinity Parties' motion for summary judgment) then the Court will turn to Hu and Reese's claims (Ask America's motion for partial summary judgment).

### A. Ask America's Claims

Ask America's claims are rooted in the purported guaranty. There are several claims here: (1) Texas Securities Act, (2) common law fraud, and (3) breach of contract.

*Texas Securities Act.* For the Texas Securities Act to apply, the "Guaranty" must have been an investment contract, because otherwise it is not a security.[4] The Texas Supreme Court has derived three core principles to consider when determining whether a certain agreement is an investment contract: "First, we must broadly construe the term 'investment contract' to maximize the protection the Act is intended to provide to the investing public."[5] Then, second, "we must focus on the economic realities of the transaction to determine whether it meets the test's requirements."[6] And finally, "if the economic real[i]ties satisfy the requirements, we must conclude that the transaction is an 'investment contract' regardless of the labels or terminology the parties used to describe it."[7] The Texas Supreme Court described

---

[4] Tex. Gov't Code § 4008.068(a).

[5] *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 670 (Tex. 2015) (cleaned up).

[6] *Id.*

[7] *Id.*

4

the federal test for determining whether something is an investment contract as containing four elements: "(1) investment of money; (2) a common enterprise; (3) expectation of profits; (4) solely from the efforts of others."[8]

The Fifth Circuit recognized in *James v. Meinke* that a guaranty "does not involve an *investment* of money in a common enterprise."[9] Rather, it is "an agreement to repay a loan to the lender should the borrower default."[10]

This is like the case here. The "Guaranty" contract does not contemplate the purchase of stock as an investment, but rather to buy and hold the stock until such time as James Chui may complete the underlying purchase. In other words, this contract facilitates an underlying investment—it is not itself the investment. It is an agreement to cover certain losses Ask America may face.

Additionally, investments typically involve some risk. But this transaction did not involve much risk at all on Ask America's part. Ask America would either have Chui buy the stock and Hu and Reese would "be personally liable to [Ask America] for the difference between [Ask America's] Total Credit and the total proceeds from the Purchase."[11] Or Chui would not have bought the stock and Hu and Reese would still be on the hook for the difference between the trading price of the shares and Ask America's cost basis.[12] Therefore, the "Guaranty" is not itself a security.

---

[8] *Id.* at 672 (cleaned up).

[9] 778 F.2d 200, 205 (5th Cir. 1985) (cleaned up).

[10] *Id.*

[11] Doc. 113 at App. 3.

[12] Doc. 113 at App. 3.

*Common Law Fraud.* There are four elements to common law fraud in Texas. Those are:

> (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.[13]

In particular, the Vaxxinity Parties assert that there is no evidence to support the common law fraud claim. Ask America's top-line response is that no-evidence summary judgment motions are improper in federal court and the motion should be denied as improper. The case cited for this proposition is *Moutawakkil v. United Financial Casualty Company*[14] from Judge Pittman. Later in the same paragraph that Ask America cites, Judge Pittman clarifies that a movant can meet his burden of showing that no genuine dispute of material fact exists when the movant can point out "that the record contains **no support** for the non-moving party's claim."[15] Thus, "a court [may] grant summary judgment when a plaintiff fails to produce any evidence whatsoever to support his claim."[16]

Here, the Vaxxinity Parties did enough to support their no-evidence argument at summary judgment by quoting Ask America's responses to interrogatories. Then, Ask America provided a declaration from Thomas Borys, who stated that "Hu and

---

[13] *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (cleaned up).

[14] No. 4:23-CV-00879-P, 2025 WL 1146668 (N.D. Tex. Jan. 2, 2025) (Pittman, J.).

[15] *Id.* at *1 (quoting *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

[16] *Id.*

Reese represented Chui had already agreed to the repurchase."[17]  The Vaxxinity Parties object to this declaration on the basis of a lack of personal knowledge.  However, because Borys is the Chief Financial Officer of Ask America, the details of such a conversation would reside within his sphere of responsibility.[18]  Therefore, the Court **DENIES** that motion to strike insofar as it applies to that statement.  Thus, the Court can consider the statement in Borys's declaration.

The Vaxxinity Parties advance two arguments against the fraud claim: that there is no evidence of a false representation and that (assuming there was a representation) there was no justifiable reliance on any statement.  As for whether there was a false representation, the Borys declaration creates a fact dispute as to whether or not Chui agreed to the repurchase.  Further highlighting the dispute, Chui's declaration states that no one contacted him "about entering into such a transaction."[19]  And that he "assumed that [Ask America] was no longer interested."[20]

The next element is justifiable reliance.  But the problem here is that whether a party's reliance was justifiable or not is generally a fact question for the jury.  Here, nothing suggests that, as a matter of law, Ask America's reliance on Hu and Reese's representation was unjustified.

---

[17] Doc. 129 at App. 3.

[18] *In re Green*, 968 F.3d 516, 524 (5th Cir. 2020) ("We have held that personal knowledge can be inferred if such knowledge reasonably falls within the person's sphere of responsibility, particularly as a corporate officer." (cleaned up)).

[19] Doc. 113 at App. 71.

[20] Doc. 113 at App. 71.

*Breach of Contract.*  The Court has reviewed Ask America's breach of contract claim against Hu and Reese.  Ask America moved for summary judgment seeking to prevail on this claim as a matter of law.  However, because the Court denies summary judgment on the common law fraud claim, the Court cannot move forward on the breach of contract claim because of the double recovery rule.  That is, when there are two potential methods of recovery, it is the jury's job to determine how to award damages.  It must be a single fact finder that awards damages on claims when they might overlap.  And because the jury must be the fact finder on damages for the fraud claim, it must also be the fact finder on damages for the contract claim in order to avoid a double recovery.

### B.  Hu and Reese's Claims

Hu's claims are discussed in three categories: (1) business disparagement, (2) federal and state securities laws, and (3) market manipulation.

*Business Disparagement.*  Hu brings a business disparagement claim.  "To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff."[21]  As Ask America points out, "the tort of business disparagement encompasses falsehoods concerning the condition or quality of a business's products or services that are intended to, and do in fact, cause financial harm."[22]  In particular, a plaintiff must

---

[21] *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

[22] *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020).

8

show "evidence of a direct pecuniary loss."[23] That is, "losses such as loss of sales, trade, or other business dealings."[24] But here, Hu and Reese lack any *direct* loss. That's because, as mere shareholders, any loss to them through the share price is not a direct loss of the sort required for a business disparagement claim.[25] *Federal and State Securities Laws.* As for federal law, the Securities Exchange Act requires the claimant to be an actual purchaser or seller of securities.[26] Neither Hu nor Reese purchased or sold securities to or from Ask America.[27] Similarly for state law, Texas law enables the seller of the security to sue.[28] But again, neither Hu nor Reese sold shares to Ask America.[29] Ask America is entitled to summary judgment on this claim.

*Market Manipulation.* To establish market manipulation under federal law, the claimant must show: "(1) that it was injured (2) in connection with the purchase or sale of securities (3) by relying on a market for securities (4) controlled or artificially affected by defendants' deceptive and manipulative conduct, and (5) the defendants engaged in the manipulative conduct with scienter."[30]

---

[23] *C.P. Ints., Inc. v. California Pools, Inc.*, 238 F.3d 690, 695 (5th Cir. 2001).

[24] *Harrison v. Aztec Well Servicing Co.*, No. 1:20-CV-038-H, 2020 WL 5514129, at *7 (N.D. Tex. Sept. 14, 2020) (Hendrix, J.).

[25] *See, e.g., id.* (explaining that a shareholder's injuries are indirect).

[26] *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 226 (5th Cir. 1994).

[27] Doc. 119 at App. 26; Doc. 119 at App. 43.

[28] Tex. Gov't Code § 4008.053(b).

[29] Doc. 119 at App. 26; Doc. 119 at App. 43.

[30] *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 580 (S.D. Tex. 2002).

9

The Vaxxinity Parties' brief[31] includes only two appendix cites demonstrating that Hu and Reese bought shares after "Defendants put their scheme into action."[32] But how did Ask America's purported statements affect the market for Vaxxinity stock? The Vaxxinity Parties never point to any evidence that its statements affected the market. However, they do bring forward a declaration[33] from a third-party who swears that he sold his stock after hearing about "the disparaging things [Ask America] was saying about Hu, Reese, and Vaxxinity."[34] But the Vaxxinity Parties never draw the connection between his sale of the stock and any purported injury.

### IV. Motions to Strike Expert Designations

This order narrows the scope of the case so much so that it appears that the Court has resolved nearly every topic on which the experts, Mr. Allan M. Lerner and Mr. Ralph S. Janvey, were going to testify above.[35] So, the Court **DENIES WITHOUT PREJUDICE** the motions to strike expert designations. If the parties would still like to pursue the motions to strike, then the movant shall file a motion within 5 days of this order, the non-movant shall file a response within 5 days of the motion, and the movant shall file a reply within 1 day of the response.

---

[31] Although these are Hu and Reese's claims, the defense of them appears in the briefing for the Vaxxinity Parties, which includes Hu and Reese.

[32] Doc. 124 at 27.

[33] The Court assumes, without deciding, that this information should be included at this stage. Ultimately, even with its inclusion, the claim fails.

[34] Doc. 125 at App. 74.

[35] It appears the sole exception to this is Lerner's testimony as to contract damages. The Vaxxinity Parties may re-raise their arguments in the renewed motion to strike. The Court does this to deal with objections to expert testimony at the same time, rather than piecemeal.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Ask America's motion for partial summary judgment and **GRANTS IN PART AND DENIES IN PART** the Vaxxinity Parties' motion for summary judgment. In summary, Ask America's common law fraud and breach of contract claims remain for trial. In reaching that result, the Court **FINDS AS MOOT IN PART AND DENIES IN PART** the motion to strike at Doc. 133, **DENIES WITHOUT PREJUDICE** the motions to strike expert designations at Doc. 120 and Doc. 114, and **FINDS AS MOOT** all other motions.

**IT IS SO ORDERED** this 4th day of August, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE